UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHARLES GOULD, JR., <br><br> Plaintiff, <br><br> v. <br><br> MARK BERTONCINI, <br><br> Defendants. | CAUSE NO. 2:21-CV-114-PPS |

## OPINION AND ORDER

Charles Gould, Jr. was convicted conspiracy to distribute crack cocaine and was sentenced to 168 months imprisonment. [*See United States v. Walton et. al.*, Case No. 2:17 CR 47]. He was recently released from federal custody after receiving Executive Clemency from President Biden. [DE 1375 in Case No. 2:17 CR 47]. In the case presently before me, which was brought while Gould was still in federal custody, Gould is suing United States Deputy Marshal Mark Bertoncini "in his personal capacity for money damages and in his official capacity for injunctive relief related to Mr. Gould's need for constitutionally adequate medical care to address his shoulder injury[.]" [DE 5 at 3]. Gould is representing himself in this matter. He alleges in his complaint that he injured his shoulder in May 2019 during recreation period at the Lake County Jail and Marshal Bertoncini denied him adequate medical care by denying his orthopedist's request for an EKG. [*Id.* at 1-2]. Bertoncini now seeks summary judgment, and the matter is fully briefed. [DE 45, 57, 58, 61, 62, 63, 64].

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

It is undisputed Gould's legal status has changed on at least three occasions which affects the status of his claim against Marshal Bertoncini. Gould started out as a pretrial detainee from June 2017 through March 17, 2020; during that time period he was at the Lake County Jail and in the custody of the U.S. Marshals Service awaiting trial in his criminal case. [Case No. 2:17-CR-47-12, DE 107]. Then, on March 17, 2020, Gould was convicted in his federal criminal case. [*Id.*, DE 816.] Gould remained in the custody of the USMS until July 1, 2021, when he was remanded to the custody of the Bureau of Prisons [DE 46-1 at 4]. Finally, as noted above, Gould was released from the custody of the BOP as of February 28, 2025, and is not currently incarcerated [DE 69].

Let's start with Gould's claim for injunctive relief against Marshal Bertoncini. This claim is now moot because it's undisputed Gould is no longer in the custody of the

2

USMS. Nothing more need be said on this claim. Summary judgment is therefore warranted in favor of Marshal Bertoncini on the injunctive relief claim.

Regarding Gould's claim for monetary damages against Marshal Bertoncini, Gould's legal status impacts the applicable standard for this claim. Specifically, from Gould's detainment in 2017 until his March 17, 2020, conviction, he was a pretrial detainee protected from federal actors by the Fifth Amendment's due process clause. *See Sides v. City of Champaign*, 496 F.3d 820, 828 (7th Cir. 2007) (noting that the Due Process Clause of the Fifth Amendment applies between arrest and conviction); *DeBenedetto v. Salas*, 2023 WL 6388127, at *5 (N.D. Ill. Sept. 29, 2023) (same); *Stennis v. Armstrong*, 2023 WL 1319561, at *6 (N.D. Ill. Jan. 31, 2023) (same). After March 17, 2020, Gould was a convicted prisoner protected by the Eighth Amendment's prohibition against cruel and unusual punishment. Gould's claim for monetary damages will therefore be assessed under both standards.

*Fifth Amendment claim*

A constitutional claim against federal officers for money damages must be brought under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), rather than under 42 U.S.C. § 1983. *Case v. Milewski*, 327 F.3d 564, 567 (7th Cir. 2003). The Supreme Court has recognized three types of *Bivens* claims: (1) a search and arrest of a private citizen without probable cause in violation of the Fourth Amendment in *Bivens*; (2) a claim against a federal employer for gender discrimination under the Due Process Clause of the Fifth Amendment in *Davis v. Passman*, 442 U.S. 228

3

(1979); and (3) a prisoner's claim of deliberate indifference to medical needs in violation of the Eighth Amendment in *Carlson v. Green*, 446 U.S. 14 (1980).

*Bivens* has no basis in any law passed by Congress. It is, therefore, an implied claim, meaning it has a somewhat rickety basis. It's for this reason the Supreme Court has recently questioned the continued vitality of these claims. Indeed, the Court stated just two terms ago that "[I]f we were called to decide *Bivens* today, we would decline to discover any implied causes of action in the Constitution." *Egbert v. Boule*, 596 U.S. 482, 502 (2022). What can be said for sure, is that it is abundantly clear the Supreme Court is not in the mood for an extension of *Bivens*. *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020). ("[F]or almost 40 years, we have consistently rebuffed requests to add to the claims allowed under *Bivens*."); *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (same). Under the current guidance from the Supreme Court, courts must ask if the case presents a new *Bivens* context and, if it does, whether special factors counsel hesitation in extending *Bivens*. "If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Abbasi*, 582 U.S. at 139.

Gould's Fifth Amendment claim, while similar to the implied cause of action recognized in *Carlson*, arises from a different constitutional provision. This is not a meaningless difference; claims for inadequate medical care arising under the Eighth Amendment utilize a different legal standard than claims arising under the Due Process Clause. *See Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018) (citing *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)). Because the right implicated by Gould's allegations arises under a different constitutional provision and utilizes a different legal standard

4

than the right at issue in *Carlson*, it presents a new *Bivens* context. *Abbasi*, 582 U.S. at 148 ("The constitutional right is different here, since *Carlson* was predicated on the Eighth Amendment and this claim is predicated on the Fifth.").

Thus, as noted above, the court must consider whether there are special factors that counsel against extending *Bivens*. The Supreme Court's recent decision in *Egbert* provides the relevant guidance in this situation:

> [I]f a claim arises in a new context, a *Bivens* remedy is unavailable if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed. If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy.

*Egbert*, 596 U.S. at 492 (quotations and citations omitted).

The Court has noted that congress had the opportunity to provide a standalone damages remedy when it enacted the Prison Litigation Reform Act, and it did not. *See Abbasi*, 582 U.S. at 148-49. The Court posited that "[i]t could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Id.* at 149. That was in 2017. Several years have passed, and still Congress has taken no action to provide a standalone damages remedy to pre-trial detainees in federal custody.

The court must also consider whether alternative remedies were available. Here, the BOP's administrative remedy program provides detainees an alternative, albeit incomplete, method of seeking formal review of any issue relating to their confinement. *DeBenedetto v. Salas*, 2023 WL 6388127, at *7 (N.D. Ill. Sept. 29, 2023) (citing 28 C.F.R. §

5

542.10). Furthermore, the Federal Tort Claims Act "generally permits plaintiffs to sue the federal government for monetary damages for the tortious conduct of its employees when those employees acted within the scope of their employment." *DeBenedetto*, 2023 WL 6388127, at *7 (citing 28 U.S.C. § 2674; *Glade ex rel. Lundskow v. United States*, 692 F.3d 718, 721 (7th Cir. 2012).) Because Congress has not taken the opportunity to create a private right of action for damages for claims like Gould's, despite the opportunity to do so, and because there are alternative remedies available to him, however inadequate they may be, I conclude that *Bivens* should not be extended to the new context presented by Gould. *See DeBenedetto*, 2023 WL 6388127, at *7 (granting a motion to dismiss after reaching the same conclusion); *Choice v. Michalak*, 2022 WL 4079577, at *7 (N.D. Ill. Sept. 6, 2022) (finding that *Bivens* should not be extended in a similar context based on Congress's decision not to authorize damages claims for federal pretrial detainees and the availability of an administrative grievance process). Summary judgment is therefore warranted in favor of Marshal Bertoncini on Gould's Fifth Amendment claim.

*Eighth Amendment claim*

Gould's Eighth Amendment claim against Marshal Bertoncini is again similar to the implied cause of action recognized in *Carlson*, and this time both claims arise under the Eighth Amendment. But this claim nevertheless presents a new context for a *Bivens* claim because U.S. Marshals represent a new category of defendants. *See, e.g., Logsdon v. U.S. Marshal Serv.*, 91 F.4th 1352, 1358 (10th Cir. 2024) (concluding that the U.S. Marshals would be a "new category" of defendants for purposes of a *Bivens* claim

6

arising under the Fourth Amendment); *Fairchild v. Cundiff*, 2024 WL 1328885, *2 (N.D. Ill. Mar. 28, 2024) ("[T]he Court joins other courts and finds there is a 'new context' because the claim involves the Marshals Service.") (collecting cases). The U.S. Marshals are different from the defendants sued in *Carlson* because, unlike the medical providers, prison officials, and high-level decision makers of the BOP sued in *Carlson*, U.S. Marshals do not make treatment decisions directly. [*See* DE 46-1 at 3]. Rather, local U.S. Marshals are only middlemen who take any requests they receive from the jail's medical staff for non-emergency medical care and forward those requests to the medical professionals at the Office of Medical Operations in the Prisoner Operations Division ("POD/OMO") for a decision. [DE 46-1 at 3]. Thus, because Gould's Eighth Amendment claim against Marshal Bertoncini again presents a new context for a *Bivens* claim, the court must consider whether special factors counsel hesitation in extending *Bivens*. *See Egbert*, 596 U.S. at 492.

Here, there are again special factors counseling hesitation in extending the *Bivens* remedy to Gould's Eighth Amendment claim. First, Marshal Bertoncini provides undisputed evidence Gould could have pursued an alternative remedy by filing an administrative grievance with the USMS. *See* Complaint Regarding USMS Personnel or Programs, https://www.usmarshals.gov/forms/complaint-form.pdf (last visited March 18, 2025). Through this grievance procedure, individuals who assert that USMS personnel engaged in misconduct may file an administrative grievance and the USMS shall investigate any "alleged improper conduct" of USMS personnel. 28 C.F.R. § 0.111(n). Various courts have considered this remedial scheme sufficient to foreclose a

7

*Bivens* remedy. See *Fairchild*, 2024 WL 1328885, *3 (concluding the USMS's administrative process precludes a *Bivens* action); *see also Clutts v. Lester*, 676 F. Supp. 3d 698, 709 (N.D. Iowa June 8, 2023) ("Numerous courts have concluded that the presence of that remedial scheme forecloses the extension of a *Bivens* action to Deputy U.S. Marshals.") (collecting cases).

A second factor that counsels against extending *Bivens* in this context is that Gould is challenging an overarching policy of the POD/OMO rather than an individual determination. Specifically, Marshal Bertoncini provides undisputed evidence that Gould's request for an EKG was denied pursuant to POD/OMO's policy limiting orthopedic referrals for chronic conditions during the COVID-19 pandemic. [DE 46-1 at 4; DE 46-12]. Therefore, like the claims in *Abbasi*, Gould's claim does not merely challenge standard law enforcement operations but rather challenges "large-scale policy decisions concerning the conditions of confinement imposed on hundreds of prisoners." *Abbasi*, 582 U.S. at 144. A *Bivens* action is not an appropriate vehicle to challenge such large-scale policy decisions. *Id.* at 140 ("[A] *Bivens* action is not a proper vehicle for altering an entity's policy.") (quotation and citation omitted). Because Gould's Eighth Amendment claim presents a new context for a *Bivens* claim and special factors counsel against extending the *Bivens* remedy to this claim, summary judgment is warranted in favor of Marshal Bertoncini on Gould's Eighth Amendment claim.

For these reasons, the Court:

(1) **GRANTS** Marshal Bertoncini's motion for summary judgment [DE 45]; and

(2) **DIRECTS** the Clerk to enter judgment in favor of Marshal Bertoncini and against Charles Gould, Jr., and to close this case.

**SO ORDERED**.

ENTERED: April 4, 2025.

                                   /s/ Philip P. Simon
                                   PHILIP P. SIMON, JUDGE
                                   UNITED STATES DISTRICT COURT